# EXHIBIT "A"
# STATE COURT PLEADINGS

ELECTRONICALLY FILED - 2021 Jun 23 1:02 PM - HORRY - COMMON PLEAS - CASE#2021CP2604161

| | |
|---|---|
| STATE OF SOUTH CAROLINA ) | IN THE COURT OF COMMON PLEAS |
| ) | FIFTEENTH JUDICIAL CIRCUIT |
| COUNTY OF HORRY ) | CASE NO.: 2021-CP-26-_____ |

Beach Patio, LLC, Rafi Adi,  )
Elior Adi, Zur Adi, Yaacov Levy,  )
and Liat Adi a/k/a Liat Levi  )
                        )
         Plaintiffs,  )
                        )
vs.                     )        **SUMMONS**
                        )        (JURY TRIAL DEMANDED)
Maxum Indemnity Company  )
                        )
        Defendant.  )
_____ )

TO:   DEFENDANT NAMED ABOVE:

      YOU ARE HEREBY SUMMONED and required to Answer to the Complaint herein, a copy of which is herewith served upon you, and to serve a copy of your Answer upon the undersigned, David J. Gundling, of Bellamy, Rutenberg, Copeland, Epps, Gravely, & Bowers, P. A., 239 Business Center Drive, Post Office Drawer 2547, Pawleys Island, South Carolina, 29585, within thirty (30) days after the service hereof, exclusive of the day of such service, and if you fail to reply to the Complaint within the time aforesaid, judgment for default will be rendered against you for the relief demanded in the Complaint.

                                              **BELLAMY, RUTENBERG, COPELAND, EPPS,**
                                              **GRAVELY & BOWERS, P.A.**

                                              s/David J. Gundling_____
                                              David J. Gundling
                                              S.C. Bar No.: 002361
                                              Attorneys for Plaintiff
                                              Post Office Drawer 2547
                                              Pawleys Island, SC 29585
Pawleys Island, SC                   Telephone:  (843) 237-3400
June 21, 2021                        dgundling@bellamylaw.com

ELECTRONICALLY FILED - 2021 Jun 23 1:02 PM - HORRY - COMMON PLEAS - CASE#2021CP2604161

| | |
|---|---|
| STATE OF SOUTH CAROLINA )<br>)<br>COUNTY OF HORRY )<br>)<br>Beach Patio, LLC, Rafi Adi, )<br>Elior Adi, Zur Adi, Yaacov Levy, )<br>and Liat Adi a/k/a Liat Levi )<br>)<br>            Plaintiffs, )<br>)<br>vs. )<br>)<br>Maxum Indemnity Company )<br>)<br>            Defendant. )<br>_____ ) | IN THE COURT OF COMMON PLEAS<br>FOR THE 15TH JUDICIAL CIRCUIT<br>CASE NO.:  2020-CP-26-_____<br><br><br><br><br><br><br><br>**COMPLAINT**<br>*(Breach of Contract and Insurance Bad Faith)*<br><br>(JURY TRIAL DEMANDED) |

      The Plaintiffs, complaining of the Defendant, will respectfully show this Honorable Court that:

## PARTIES

    1.    Plaintiff Beach Patio, LLC is a South Carolina limited liability corporation duly organized and existing under the laws of the State of South Carolina, is in good standing with the South Carolina Secretary of State and at all times material hereto, was doing business in Horry County, South Carolina.

    2.    Rafi Adi, Elior Adi, Zur Adi, Yaacov Levy, and Liat Adi a/k/a Liat Levi are citizens and residents of Horry County, South Carolina and at all times material hereto were members of Beach Patio, LLC

    3.    Upon information and belief, Defendant Maxum Indemnity Company [hereinafter "Insurer"], is a corporation organized and existing under the laws of the State of Connecticut that is not authorized to do business in the State of South Carolina with the South Carolina Secretary of State but is licensed with the South Carolina Department of Insurance (License # 26743) with an address

of 3655 North Point Parkway, Suite # 500, Alpharetta, GA 30005, Insurer does business as a casualty and property insurer in Horry County, South Carolina.

## JURISDICTION AND VENUE

4. Plaintiffs reiterates the allegations contained in above as if repeated verbatim herein.

5. Upon information and belief, Insurer is licensed by the South Carolina Insurance Commissioner to enter into insurance contracts within the State of South Carolina and is subject to South Carolina insurance statutes and regulations.

6. Insurer entered into a contract of insurance with the Plaintiffs that was to be performed in whole or in part in Horry County, South Carolina. The contract of insurance in set forth in that certain Policy described below.

7. The Plaintiffs incurred loss and damage to the Loss Location as defined below, as a result of high winds, rain and torrential rain caused by Hurricane Florence on or about September 14, 2018.

8. The Insurer hired the Adjuster to adjust the insurance claim with the Plaintiffs.

9. The Insurer denied the insurance claim filed by the Plaintiffs.

10. Upon information and belief, the Insurer breached the insurance contract between Insurer and the Plaintiffs entered into in Horry County South Carolina and other claims accrued against the Insurer in Horry County, South Carolina.

11. As a result of the foregoing, this Court has personal jurisdiction over the Defendant.

12. This Court has subject matter jurisdiction and venue is proper in Horry County, South Carolina.

ELECTRONICALLY FILED - 2021 Jun 23 1:02 PM - HORRY - COMMON PLEAS - CASE#2021CP2604161

## GENERAL ALLEGATIONS

13.   The Plaintiffs reiterate the allegations contained above as if repeated verbatim herein.

14.   At all times material hereto, Plaintiff Beach Patio, LLC owned real and personal property and operated a business at 1623 Hwy 501, Myrtle Beach, SC 29577 [hereinafter the "Loss Location"].

15.   On or about September 14, 2018 high winds and torrential rain resulting from Hurricane Florence, caused severe damage to real and personal property of the Plaintiff, Beach Patio LLC at the Loss Location.

16.   At the time of Hurricane Florence, the Plaintiff, Beach Patio, LLC had in effect Commercial Insurance Policy Number BDG-3031208-01 with the Insurer [the "Policy"] which included insurance limits for the building and personal property at the Loss Location. Under the above-referenced policy the coverages were as follows:

| | |
|---|---|
| Building | $800,000 |
| Business Personal Property | $250,000 |
| Business Income with Extra Expense | $100,000 |
| Outside Signs | $ 20,000 |

17.   The effective dates of the Policy were August 4, 2018 to August 4, 2019.

18.   The Plaintiff, Beach Patio, LLC was the named insured on the Policy and the other Plaintiffs were also insured under the policy as members of Beach Patio, LLC.

19.   The Plaintiffs timely filed a claim and the Insurer opened the claim under claim number BDG-3031208-01-01-01.

20.   The Plaintiffs retained Zevuloni & Associates, a public adjuster to assist the Plaintiffs

ELECTRONICALLY FILED - 2021 Jun 23 1:02 PM - HORRY - COMMON PLEAS - CASE#2021CP2604161

in adjusting the claim.

21.     Plaintiff Beach Patio, LLC purchased the Loss Location on August 4, 2017. Prior to purchasing the property the Plaintiffs had an inspection done by Superior Inspection Services, LLC on May 17, 2017. The report stated in part as follows:

> Ceiling Inspected …There are also areas that have been damaged by roof leaks that will need to be repaired after the leaks are corrected.
>
> Ceiling …There are areas that have been damaged by roof leaks that will need to be repaired after the leaks are corrected.
>
> Roof and Attic …There are 3 or 4 leaks, one is where the HVAC unit was removed from its saddle and the others need to be found and inspected.

22.     After the Plaintiff, Beach Patio, LLC purchased the Loss Location, the Plaintiffs undertook to do the roof repairs that is apparent from corrective repairs as evidenced by the white sealant on the roof. After these repairs were made, the roof was free of leaks until it was damaged by Hurricane Florence. Prior to Hurricane Florence, no further repairs had been made to the roof and no insurance claims were filed for roof leaks.

23.     Hurricane Florence caused severe damage to the roof. As a result of the leaks in the roof caused by Hurricane Florence, the Plaintiff, Beach Patio, LLC engaged Monarch Roofing to inspect the damage and make provisional repairs. Tripp Howland is the Commercial Division Manager for Monarch Roofing inspected the roof on October 24, 2018. He caused the provisional repairs to be made at the time. Mr. Howland reported as follows.

> My name is Trip Howland I am the commercial division manager I have been doing commercial roofing for 34 years. I have been involved with the building at 1623 US 501 Myrtle Beach SC 29577. The storm that hit on 9/14/2018 named Florence causing severe damage to the roof. The right rear corner of the building was damaged due to the wind. The uplift in the corner of the building caused the rubber to be uplifted and the ISO underneath to be pulled up even though it had 8 plates and screws per board. The corner was blown back exposing an area approx. 10x10 foot. There were also several other areas that were wind damaged causing laps to fail and rubber to be blown up and pulled away from the curbs of the

HVAC units. There is also a[n] area where the roof steps down to a lower roof. The drip edge at this location is approximately 20' long the EPDM roofing was blown up and ripped at this location also. There were several severe leaks that were caused by the storm causing the ISO to be saturated and needing to be replaced. The removal and replacement of the ISO along with the need to replace the rubber and the expense of all the repairs my recommendation would be to replace the entire roof. The repair to the roof would be an ongoing constant battle. There were some repairs made with a coating prior to the storm. Then all the storm damage occurred so the ability to make repairs with the same materials would be very difficult and costly to restore the roof to its original state prior to the storm damage. The replacement of the roof would be a more cost-effective solution. The upper roof had a door from one of the HVAC units blow off and blow around causing several holes and three large gashes in the roofing. I am attaching all the pictures that I have from then and I also sent a file in a separate email of all the repairs. If anyone has any questions or concerns please feel free to contact me at 843-503-1975.

24.     Mr. Howland was also at the Loss Location on October 25, 2018, when Dustin Ellis, independent adjuster with Engle Martin & Associates, who was hired by the Insurer, inspected the Loss Location with Don Antol, the construction consultant for the Plaintiffs.

25.     On or about December 2, 2019 the Public Adjuster, on behalf of the Plaintiffs, presented an appraisal of the building claim to the Adjuster and the Insurer for a total building claim amount of $544,057.59. The Public Adjuster on behalf of the Plaintiffs also submitted a business personal property estimate of $13,094.00. The business income claim is still at issue.

26.     On December 20, 2018, Kurt R. Kraft, for the Insurer, sent the Plaintiff, Beach Patio, LLC a letter stating that the policy provides no coverage for the claim to the roof or claim for the interior rainwater penetration and provided no payment for the loss. The basis for the denial were as follows:

- It is clear that the white sealant has been applied, in stages, over a period of several months, beginning in mid-2017;

- The NOAA satellite images taken immediately post-Hurricane Florence do not show any "peeled back" damage to the membrane;

- Various leaks were attributed to rain water runoff and/or wind driven rain through various unsealed openings due to lack of proper maintenance and/or age related deterioration;

ELECTRONICALLY FILED - 2021 Jun 23 1:02 PM - HORRY - COMMON PLEAS - CASE#2021CP2604161

• Evidence shows repeated and long-term seepage of water through worn and deteriorated roofing and sealant material.

27. The denial letter from the Insurer dated December 20, 2018 made erroneous assumptions apparently based upon the report from EFI Global dated December 19, 2019, based on their inspection of the Loss Location on November 29, 2018. The most obvious erroneous statement was that all the white sealant material was applied to mitigate damages after the storm and that the roof was all black before the hurricane. That was not the case as verified by the satellite images reported by the Insurer and the EFI Global Report that verified older and recent applications of the white sealant. Further, as set forth above, the white sealant material was applied in 2017 when the roof was initially repaired. Although some sealant was applied to mitigate the damage, the new application was very obvious to all those who inspected the roof. EFI Global also incorrectly suggests that there was lack of proper maintenance and/or age related deterioration of the roof coverage was evidenced by a progressive application of the white sealant. The white sealant was applied shortly after the Plaintiff, Beach Patio, LLC purchased the Loss Location and the roof was leak free from that time.

28. The Policy provides an appraisal provision as follows:

ELECTRONICALLY FILED - 2021 Jun 23 1:02 PM - HORRY - COMMON PLEAS - CASE#2021CP2604161

> **2. Appraisal**
>
> If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
>
> a. Pay its chosen appraiser; and
> b. Bear the other expenses of the appraisal and umpire equally.
>
> If there is an appraisal, we will still retain our right to deny the claim.

29.     On May 20, 2020 the Plaintiffs, through its attorney, sent a letter to the attorney for the Insurer demanding an appraisal under the above provision.

30.     On June 18, 2020, the attorney for the Insurer sent an e-mail to the attorney for the Plaintiffs stating that the Insurer rejected the Plaintiffs' demand for an appraisal.  On June 24, 2020 the attorney for the Plaintiffs reiterated the Plaintiffs' demand for payment of insurance based upon the Plaintiff's building estimate of $544,057.57 and the Plaintiff, Beach Patio, LLC's business personal property estimate of $13,094.00.     Pursuant to the appraisal provision, an appraisal is required if the Insurer disagrees with the value of the loss for the building and personal property claims submitted by the Plaintiffs.  Since the insurer has refused to participate in an appraisal, the Plaintiffs informed the attorney for the Insurer that the Plaintiffs was left to assume that the Insurer does not object to the value of the appraisal as presented by the Plaintiffs.  Upon information the Insurer never performed an appraisal of the building damage or the business personal property damage and is evidence of the fact that the Insurer never intended to adjust the Plaintiffs' claim in

good faith and pursuant to the terms of the Policy.

31.     Upon information and belief, Insurer failure to investigate, appraise and adjust all claims in this matter pursuant to the terms of the Policy and failure to agree to an appraisal required under the terms of the Policy, is an attempt to delay payment required under the Policy.

32.     This failure by Insurer has resulted in unfair and unreasonable delays in the settlement of the Plaintiffs' claims while allowing the Insurer the continued use of insurance proceeds which are rightly due and payable to the Plaintiffs.

### FIRST CAUSE OF ACTION
### BREACH OF CONTRACT AGAINST INSURER

33.     The Plaintiffs reiterate the allegations contained above as if repeated verbatim herein.

34.     At all times material hereto, the Plaintiff, Beach Patio, LLC had contracts of insurance with Insurer. The Plaintiff, Beach Patio, LLC made claims to the Insurer for payment of its building and personal property. The claims were properly made under the "Loss Payment" provisions of the Policy which required the Insurer to pay the value of the loss. Upon information and belief, Insurer failed to honor the terms of its contracts of insurance with the Plaintiff in several particulars, including, but not limited to, the following:

   a.   In failing to pay any of the building claim of the Plaintiffs;

   b.   In failing to pay any of the business personal property claim of the Plaintiffs;

   c.   In failing to pay for all of the damages suffered by the Plaintiffs which was included under the terms of its Policy;

   d.   In failing to comply with the appraisal provision of the Policy; and

   e.   In failing to adjust the claim under the primary coverage.

35.     The Plaintiffs are informed and believes that the Insurer breached its contract of

ELECTRONICALLY FILED - 2021 Jun 23 1:02 PM - HORRY - COMMON PLEAS - CASE#2021CP2604161

insurance with it and as a result the Plaintiffs are entitled to receive all benefits under their Policy and judgment against the Insurer for actual and consequential damages and pre-judgment interest as a result of the Insurer's breach of contract in an amount to be proved at the trial of this case.

### FOR A SECOND CAUSE OF ACTION
### BAD FAITH REFUSAL TO PAY BENEFITS DUE AGAINST INSURER

36. The Plaintiffs reiterate the allegations contained above as if repeated verbatim herein.

37. At all times material hereto, there existed a mutually binding contract of insurance between Plaintiffs and the Insurer.

38. The Plaintiffs performed all conditions precedent as required by the Policy for filing a claim and receiving benefits, but Insurer has refused to pay all benefits required under its contract of insurance.

39. The Plaintiffs are informed and believes that Insurer has improperly refused to pay the insurance benefits due without reasonable cause and in bad faith or by an unreasonable action.

40. As a result of the foregoing, the Plaintiffs are informed and believes that it is entitled to judgment against the Insurer for actual, consequential and punitive damages, plus pre-judgment interest in an amount to be proved at the trial of this case.

### FOR A THIRD CAUSE OF ACTION
### IMPROPER CLAIM PRACTICES AGAINST INSURER

41. The Plaintiffs reiterate the allegations contained above as if repeated verbatim.

42. The Plaintiffs are informed and believes that Insurer has violated S.C. Code Annotated §38-59-20 in several particulars, including, but not limited to the following:

    a. Knowingly misrepresenting to Plaintiff pertinent facts or Policy provisions relating to coverage at issue or providing misleading information with respect to coverages;

ELECTRONICALLY FILED - 2021 Jun 23 1:02 PM - HORRY - COMMON PLEAS - CASE#2021CP2604161

    b.    Failing to adopt and implement reasonable standards for the prompt investigation settlement of claims;

    c.    Not attempting in good faith to effect prompt, fair and equitable settlement of claims submitted to it in which liability has become reasonable clear;

    d.    Compelling Policy holders to institute suites to recover amounts reasonably due or payable with respect to claims arising under its Policy by offering substantially less than is due;

    e.    Offering to settle claims for an amount less than the amount otherwise reasonably due or payable based on the possibility or probability that the Policy holder would be required to incur attorney's fees to recover the amount reasonably due or payable;

    f.    Invoking or threatening to invoke Policy defenses not in good faith and with reasonable expectation of prevailing with respect to the Policy defense; and

    g.    Other practices which constitute an unreasonable delay in paying or an unreasonable failure to pay or to settle in full claims arising under coverages provided in its Policy.

43. The Plaintiffs are informed and believes that the refusal to pay all allowable benefits was without reasonable cause or in bad faith and in violation of South Carolina statutory law.

44. The Plaintiffs are informed and believes that Insurer has improperly refused to pay insurance benefits due without reasonable cause and in bad faith and as result the Plaintiffs are informed and believe that it is entitled to judgment against the Insurer in the amount of reasonable attorney's fees and costs in this matter.

WHEREFORE, the Plaintiff respectfully requests the following relief:

A. Judgment against Defendants in an amount to be proved at the trial of this case including actual damages, consequential damages, punitive damages and attorney's fees;

B. Prejudgment interest at the statutory rate from the date determined to be the reasonable time period for payment of the claim; and

C. For such other and further relief as this Court may deem just and proper.

ELECTRONICALLY FILED - 2021 Jun 23 1:02 PM - HORRY - COMMON PLEAS - CASE#2021CP2604161

ELECTRONICALLY FILED - 2021 Jun 23 1:02 PM - HORRY - COMMON PLEAS - CASE#2021CP2604161

                                      **BELLAMY, RUTENBERG, COPELAND, EPPS,**
                                      **GRAVELY & BOWERS, P.A.**

                                      s/David J. Gundling
                                      David J. Gundling
                                      S.C. Bar No.: 002361
                                      Attorneys for Plaintiff
                                      Post Office Drawer 2547
                                      Pawleys Island, SC 29585
Pawleys Island, SC                    Telephone:  (843) 237-3400
June 22, 2021                          dgundling@bellamylaw.com